**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CASE NO:  GLR-20-0283** |
| **GARY ROCKY JONES,** | |
| **Defendant.** | |

**GOVERNMENT'S ADDENDUM TO MOTION TO ADMIT EVIDENCE
PURSUANT TO RULES 414, 404(b), & 401, AND AS INTRINSIC TO THE CHARGED
COUNTS, AND REPLY TO DEFENDANT'S RESPONSE**

The United States hereby files an addendum to its motion to admit evidence, replies to the defendant's response, and requests a pretrial ruling regarding the admission of evidence at trial pursuant to Rules 414, 404(b), & 401 of the Federal Rules of Evidence.  This motion supplements the government's filing in Document 61, and provides notice of additional evidence that the government intends to introduce at trial.[1]  The evidence should all be admitted because it is relevant, intrinsic to the charged offenses, and its admission will not unduly prejudice the defendant.  It follows that all the evidence is admissible under Federal Rules of Evidence 401, 404(b), and 414.

## I.      FACTUAL BACKGROUND

### A.      Overview

The following will provide a detailed recitation of the facts that the United States will seek to present to the jury, in order to provide the context under which the United States intends

---

[1]  The government previously identified to the defendant much of the evidence it is seeking to admit pursuant to 404(b) and 414, and provided copies of the relevant records in discovery.  To the extent that this filing addresses additional evidence, the government has previously provided the relevant records in discovery, and this motion should be treated as notice of the government's intent to admit such evidence.

to introduce this evidence.

Counts One and Two:

In 2015, when Jones was 35-36 years old, he engaged in anal and oral sex with John Doe 1, then 15 years-old.  Jones was charged with the sexual abuse of John Doe 1 in Septebmer 2015, and two of his phones were seized.  The Baltimore City Police Department digital forensic lab was unable to access the defendant's phones, and the charges were later dismissed after John Doe 1 declined to testify following numerous postponements in the Circuit Court for Baltimore City. Videos and images of the abuse were produced by Jones, and these files were  found in an iCloud and SNAP account linked to Jones during this federal investigation.  Count 1 relates to images found in both accounts (iCloud & SNAP) that depict a penis inserted into John Doe 1's mouth, as well as an image of John Doe 1 standing in his kitchen, with his penis exposed.  Count 2 relates to a video file in the iCloud account and depicts an adult male's penis inserted into John Doe 1's anus.  The government bears the burden of proving that Jones created the files that relate to Counts 1 and 2.

Counts Three through Forty-Two:

Jones maintained a variety of Instagram accounts, all using various aliases, usernames, and profile images.  Notably, Jones' Instagram accounts did not list his true name or include a photo of Jones as his profile image.[2]  The conduct occurred using a mobile phone and cellular internet service, thus IP addresses did not leave a trail to the user.  Using these Instagram accounts that hid his true identity, Jones exploited fifteen (15) additional victims (John Does 2 through 16) for two years starting in September 2018 and continuing until his arrest in September 2020.

---

[2] Although he had many other Instagram accounts, Jones used the accounts with usernames "lorpeee," "lorpeeelove," and "gmc.boi" to exploit the minor victims charged in counts Two through Forty-Two.

Counts Three through Twenty-Seven and Counts Twenty-Eight through Forty-Two[3] relate to the exploitation of these fifteen (15) additional victims (John Does 2 through 16).[4]  Although his abuse of each victim was unique in some way, the defendant's typical conduct was to pose as a teenage male and then convince the adolescent male victims to send him images and videos of their genitals, as well as depicting the boys engaging in various sex acts.  Using the anonymized Instagram accounts, the defendant coerced the victims through a variety of methods:  he frequently offered the adolescent boys fame in the form of Instagram "followers," and he also paid (or offered to pay) some of them directly in a variety of forms, including the purchase of mobile phones, clothes, shoes, pizza, and Cash App transfers.  In exchange for these benefits, the defendant required the minors to expose their penis and anus, masturbate, and insert their fingers into their anus, all while video streaming (or by sending files) using Instagram.  In most cases, the defendant instructed the victims to expose their anus and buttocks while using their hands to "shake" their buttocks, and state, "open up."  For reasons that would later become obvious to the victims, the defendant also demanded that they include their faces in the depictions.  Some of the videos of the victims' genitals were live streamed, and others were sent as video files using the Instagram application.

Jones created his own recording of the victim using two methods: (1) Jones would use his iPhone's "screen record" feature to create a recording of the victim as it displayed on his phone; and (2) Jones would use a second iPhone to record what was displayed on the phone that was

---

[3] Count Two through Twenty-Seven charge the sexual exploitation of the victims on specific days, and Counts Twenty-Eight through Forty-Two charge one count of Coercion and Enticement as to each victim, relating to the time period that the defendant communicated and exploited that victim.

[4] The victims, who ranged in age from 8 to 16, were from Maryland, Virginia, Tennessee, Alabama, and Ohio. Some of the victims were connected to each other through social networks, which was often how the defendant met many of them.

communicating with the victim on Instagram.[5]  The videos created using either method were saved to the same iCloud account.  Although the victims showed their faces and more to Jones, Jones used only a cartoon type profile image, and never turned his camera on.  Thus, while the files that were located in the iCloud account clearly depict the victims and the sexually explicit conduct, the defendant is not in any of the videos—only the anonymous Instagram account name and/or unhelpful profile image.

Once the victims fell for the trap and sent naked depictions of their genitals, the defendant, as "gmc.boi" or whichever identity he was using, increased his demands.  When the victims refused,  the defendant threatened them with exposure to force them to continue to produce and send him explicit files.

During the exploitation of two of the victims, the defendant coerced them to sexually abuse their even younger brothers, and to send depictions of that abuse to Jones as mentioned above.  For example, the defendant's abuse of John Doe 3 (age 16 at the start, although Jones believed him to be 14) started in approximately April 2019 and continued up until the defendant's arrest in September 2020.  After enticing John Doe 3 through direct benefits (phones, shoes, clothes, cash, etc.), the defendant coerced John Doe 3 to sexually abuse his 11-year-old brother (who Jones believed was 9), John Doe 4, and to send depictions of the abuse to Jones.  Around the time this abuse began, John Doe 3 begged Jones to not make him continue to exploit his little brother, and even told Jones that he was going to kill himself.  The defendant did not relent, and John Doe 3 continued to engage in sex acts with his little brother for at almost 4 months and streamed videos to Jones that depicted the various sex acts.  The sex acts included mutual masturbation, oral sex,

---

[5] During the Instagram communications, the victims often told "gmc.boi," "lorpeee," or "lorpeeelove" not to record their genitals, and Jones would often agree.  Instagram notifies users when another user is using the iPhone screen record feature, so by using this second method of creating his own videos, Jones avoided the victim's knowledge that Jones recorded the conduct.

and simulated anal sex acts.  Jones eventually communicated directly with John Doe 4, including offering to pay John Doe 4 to engage in sexually explicit conduct on his own and send it to Jones (count 15).  During the course of the exploitation, Jones threatened to expose John Doe 3 as a method to force him to continue the sexual conduct.  Jones also traveled to Ohio on multiple occasions, where he met in person with John Doe 3 and sexually abused John Doe 3 in a car and in a hotel room rented to Jones.  Counts 9 through 15 relate to *some* of instances where Jones forced John Doe 3 and John Doe 4 to engage in sex acts, and Counts 29 and 30 related to Jones' coercion and enticement of the boys from 2019 until Jones' 2020 arrest.

The defendant also coerced John Doe 6 (age 13), to molest his little brother, John Doe 7 (age 8).  After communicating with John Doe 6 for a few weeks, and pretending to be a 17 year old (using John Doe 3's true name), Jones convinced John Doe 6 to send a video of him masturbating his exposed genitals.  Jones then convinced John Doe 6 to masturbate next to his sleeping brother and asked him to ejaculate on his brother's face.  After John Doe 6 sent a video of substantially the conduct that Jones requested, Jones then threatened to expose John Doe 6 unless he abused his younger brother again.  John Doe 6 complied, and again live streamed to Jones a video of John Doe 6 putting his penis next to his brother's face and masturbating, while his brother slept.

The files that make up the production counts in Counts 2 through 27 and are listed in the superseding indictment were located in an iCloud account that is associated with two email accounts:  shitmanbaby@gmail and ddhman2929@iCloud.  Neither email address contains the defendant's name or identifiers, and presumably the defendant will (1) deny ownership/control of the account, (2) deny knowledge of the contents of the account, and (3) **deny that he caused the production of the files that are the subject of the indictment**.  The government will present

circumstantial evidence of the defendant's ownership/control over the iCloud account, but must still prove beyond a reasonable doubt that the defendant caused the production of the files therein. The files in the iCloud account led to the victims' Instagram accounts (because the videos included the victims' Instagram usernames and some of the chats), which in turn led to the 3 Instagram accounts that communicated with the victims (gmc.boi, lorpeee, and lorpeeelove). These Instagram accounts were obtained and include much (but not all) of the Instagram conversations between the victims and the user the Instagram accounts.[6]

### Distribution of Child Pornography on Facebook (Count 43):

Using his Facebook account "DDh Man", Jones communicated with another individual who claimed to be a 13 year-old male in the Dominican Republic. Using a Spanish to English translator application, Jones told the other user that he was a 17 year-old male. On April 2, 2018, Jones used Facebook to send a video of a prepubescent male performing oral sex on an adult male to the other Facebook user. The DDh Man Facebook account has several pictures and videos of Jones, as well as a Facebook Marketplace chat where Jones provides his known home address.

### Possession of Child Pornography in iCloud  & SNAP Accounts (Counts 44 and 45):

Count 44 relates to child pornography found in the iCloud account mentioned above. The child pornography includes videos depicting prepubescent minors engaged in sexually explicit conduct.   Count 45 relates to the child pornography of John Doe 1 relating to Count 1, found in the SNAP, mentioned above.

---

[6] These three Instagram accounts do not list a name or address that can be directly linked to the defendant.  It is understood that the primary defense in this case will be that the defendant was not the user of any of the Instagram accounts that are undisputedly responsible for the exploitation of John Does 2 through 16.  As such, proving the defendant to be that user is the single most significant issue in this trial.

## II.   FACTUAL BACKGROUND REGARDING DEFENDANT'S UNCHARGED ACTS

### A.   Overview

The evidence that the government intends to introduce at trial that is arguable additional bad act evidence, falls into four categories:[7]

1.   The defendant's two prior instance of child molestation involving the sexual exploitation of 4 adolescent males;

2.   The defendant's attempted sexual exploitation of two minor males using his personal Facebook account;

3.   The defendant's exploitation and related conduct, including his methods of coercion, towards John Does 2 through 16, during the period of the charged coercion and enticement, but not listed in the charged counts of sexual exploitation; and

4.   Evidence of the defendant's exploitation of the victims located on the devices seized from the defendant's person and his residence.[8]

### B.   The Defendant's Prior Convictions

#### a.   2004 Molestation of Two Males, Ages 12 and 14

On December 29, 2004, two male victims, ages 12 and 14, were in the defendant's home in Baltimore City.  The defendant locked the door and ordered the victims to perform sex acts on each other, stating that, if the victims did not comply, "there would be consequences."  The victims felt threatened and performed the sex acts as the defendant requested.  The police were later notified that the defendant had shown a video of the victims' performing the sex acts to people in

---

[7] The government's initial motion to admit other act evidence, (ECF 61), also referenced two additional matters, also addressed in the defendant's opposition (ECF 80), that are now moot.  The government will not offer evidence of the defendant's exploitation of John Doe 1 other that the conduct referred to in Count 1 and Count 2; and the government will not offer evidence of the defendant's use and control over approximately 50 online accounts.

[8] Although not referenced in the government's original motion, nor mentioned in the defendant's response, the government has provided notice to the defense of this evidence in discovery, through emails, and through evidence reviews.  Additionally, the digital devices have been available for inspection by the defense since the defendant's arrest in 2020.

the neighborhood, although no video was recovered.  As a result of that conduct, on July 21, 2004, in the Circuit Court for Baltimore City, in Case Nos. 104033023 & 104033025, the defendant was convicted of two counts of Assault in the Second Degree, in violation of Section 3-203 of the Maryland Criminal Law Article.

b.  <u>2005 Molestation of Two Males, Ages 8 and 11</u>

On multiple occasions through October 2005, the defendant caused two minor males, ages 8 and 11, to perform fellatio on the defendant in exchange for monetary payment.  The victims knew the defendant by the nickname "Man."  As a result of that conduct, on June 8, 2006, in the Circuit Court for Baltimore City, in Case Nos. 106027038 & 106027044, the defendant was convicted of two counts of Sexual Offense in the Second Degree, in violation of Section 3-306 of the Maryland Criminal Law Article.

As a result of the defendant's 2006 conviction for Sexual Offense in the Second Degree, the defendant was required to register as a sex offender in Maryland.  Thus, when he committed the crimes charged in Counts 1 through 42, the defendant also violated 18 U.S.C. § 2260A (Commission of a Felony Crime Involving a Minor by a Registered Sex Offender).

**C.**   **<u>The Defendant's Exploitation of Two Minor's Using His Facebook Account</u>**

A review of the defendant's Facebook account reveals numerous examples of the defendant's attempts to exploit minors who reside in Central and South America.  The government intends to offer two examples.

In April 2018, using the Facebook account Ddh Man, Jones communicated with another Facebook user, Yandel Brown ("Brown").  Jones said he was a 17 year-old female and offered to pay for Brown to fly to the U.S.  Jones also offered Brown money, and then asked his age.  Brown replied, "I'm 13".  Jones asked Brown to "send me a sexy video" and "send me one of your body",

8

and "send me a video of your ass."  Jones sent Brown a video of child pornography, depicting a prepubescent male performing oral sex on an adult male (Count 43).  Jones sent Brown two more videos and Brown eventually replied, "That's disgusting" and "Don't send me anymore videos." Jones also said to Brown, "Can you keep a secret."

In September 2018, using the same Facebook account, Ddh Man, Jones communicated with another Facebook user, Gregery Ltz Blkakitooh King ("King").  Jones quickly said to King, "Send me a picture of you.",  "let me see", and "take it out." After King responded, "I'm 15", Jones still sent the following messages:  "Let me see your face and body", and "Let me see your behind."

**D.     Additional Information Regarding the Defendant's Exploitation, Coercion and Enticement of John Does Two through Sixteen**

As mentioned above, the defendant's exploitation and coercion of the minor victims did not occur in a vacuum on the days of the exploitation account, but occurred over a period of time, as referenced in time range alleged in the coercion and enticement counts.  This is borne out primarily in two ways:  (1) chats obtained from search warrants of the three Instagram accounts used to exploit the victims; and (2) videos sent or live streamed by the victims and saved to the iCloud account.  Additional details of this evidence is discussed in the argument section below.

**E.     The defendant's Exploitation of the Victims Located on the Devices Seized from the Defendant's Person and Residence**

As mentioned above, the counts of sexual exploitation of John Does 2 through 16 (3-27) relate primarily to files found in an iCloud account, and corresponding chats located in anonymous Instagram accounts.  The government intends to prove that the defendant controlled the accounts, and particularly, that the defendant was the user of the Instagram accounts that exploited the victims, and caused them to produce and livestream sexually explicit conduct.  When the defendant

was arrested on September 1, 2020, digital devices were seized from his residence and person. Relevant for this motion are three devices:  an iPhone XS max that was in his bed (1B3/Exhibit 13.2), and iPad that was on a dresser in his bedroom (1B7Exhibit 13.4), and another iPhone that was on his person (1B18/Exhibit 16.1).  Forensic examiners were able to access much of the data on 1B3 and 1B7, but were unable to access 1B18 – until earlier this summer.  All three devices contain significant evidence that ties the defendant to the exploitation of the victims in this case, and to being the user of the Instagram accounts.  Most but not all of that evidence is child pornography.

## III.  THE LAW

### A.  The elements of the offenses

As a result of the conduct described above, the defendant was charged in  the Superseding Indictment with twenty-seven (27) counts of Sexual Exploitation of a Child (Counts 1-27), fifteen (15) counts Use of Interstate Commerce Facility to Entice a Minor to Engage in Sexual activity, in violation of 18 U.S.C. § 2422(b) (Counts 28-42), one (1) count of Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2) (Count 43), two (2) counts of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Counts 44 and 45), and one (1) count of Commission of a Felony Crime Involving a Minor by a Registered Sex Offender, in violation of 18 U.S.C. § 2260A (Count 26.  Below are the elements of the charges in the Superseding Indictment.

a.  The elements of Counts Two through Twenty-Seven (Sexual Exploitation of a Minor)

i.  An actual minor, that is, a real person who was less than 18 years old, was depicted;

ii.  That the defendant knowingly employed, used, persuaded, induced, enticed

or coerced a minor to engage in sexually explicit conduct[9] for the purpose of producing a visual depiction of such conduct; and

      iii.   The defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

    b.   <u>The elements of Counts Twenty-Eight through Forty-Two (Coercion and Enticement):</u>

      i.   The defendant knowingly used a facility or means of interstate commerce to persuade, induce, entice or coerce an individual under the age of eighteen (18) to engage in sexual activity, or attempted to do so;

      ii.   That the defendant believed that such individual was less than eighteen (18) years of age; and

      iii.   That the defendant could have been charged with a criminal offense for engaging in the specified sexual activity.

    c.   <u>The elements of Count Forty-Three (Distribution of Child Pornography):</u>

      i.   That the defendant knowingly distributed a visual depiction of sexually explicit conduct;

---

[9] The jury will be instructed that sexually explicit conduct includes the lascivious exhibition of the genitals or pubic area of any person.  The jury will be further instructed, consistent with *Sand*, that the term "lascivious exhibition" means a depiction that displays or brings to view to attract notice to the genitals or pubic area of children in order to excite lustfulness or sexual stimulation in the viewer, and that the jury should consider the following, non-exhaustive list of questions in reaching their decision:

➢ Whether the focal point of the visual depiction is on the child's genitals or pubic area, or whether there is some other focal area;
➢ Whether the setting of the visual depiction makes it appear to be sexually suggestive, for example, in a place or pose generally associated with sexual activity;
➢ Whether the child is displayed in an unnatural pose, or in inappropriate attire, considering the age of the child;
➢ Whether the child is fully or partially clothed, or nude, although nudity is not in and of itself lascivious;
➢ Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and
➢ Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

      ii.  That the defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and knew that the visual depiction was of such conduct; and

      iii.  That the visual depiction was transported in interstate or foreign commerce

   d.  <u>The elements of Counts Forty-Four and Forty-Five (Possession of Child Pornography):</u>

      i.  First, that the defendant knowingly transported (or shipped or distributed or received or sold or possessed with intent to sell) or possessed a visual depiction;

      ii.  Second, that the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce;

      iii.  Third, that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrays that minor engaged in that conduct; and

      iv.  Fourth, that the defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrayed a minor engaged in that conduct.

   e.  <u>The elements of count Forty-Six (Commission of a Felony Crime Involving a Minor by a Registered Sex Offender):</u>

      i.  First, that the defendant committed a felony offense involving a minor;

      (satisfied with a conviction of any of Counts 1-39)

      ii.  Second, that at the time the defendant committed a felony offense involving a minor, the defendant was required to register as a sex offender under the state laws of Maryland.

## B.    <u>Federal Rule of Evidence 414</u>

Rule 414 provides that in a criminal case in which the defendant is accused of a sexual assault or child molestation, evidence of the defendant's commission of another offense of sexual assault or child molestation is admissible, and may be considered for its bearing on *any matter to which it is relevant*. Fed. R. Evid. 414(a) (emphasis added).  Such evidence is not temporally limited to prior acts of a defendant, but instead encompasses all other acts, whether before, after, or contemporaneous with the charged conduct. *See United States v. Mohr*, 318 F.3d 613, 617 (4th

Cir. 2003) (discussing Rule 404(b)); *see also United States v. Sioux*, 362 F.3d 1241, 1246–47 (9th Cir. 2004).

Rule 414 provides in pertinent part:

In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

*Id.*  Child molestation is defined in the rule to include both state and federal crimes involving sexual abuse and exploitation of children.  Rule 414 defines "child molestation" broadly to include the production (2251(a)) and possession (2252A) of child pornography:

(A)     Any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;

**(B)     Any conduct prohibited by 18 U.S.C. chapter 110;**

(C)     Contact between any part of the defendant's body—or an object—and a child's genitals or anus;

(D)     Contact between the defendant's genitals or anus and any part of a child's body;

(E)     Deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or

(F)     An attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E).

Fed. R. Evid. 414(d) (emphasis added).

Rule 414 "create[s] an exception to the general ban on propensity evidence contained in Rule 404(b)." *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006); *United States v. Kelly*, 510 F.3d 433, 436-37 (4th Cir. 2007) (Rule 414 "is an exception to the general rule that evidence of past crimes may not be used 'to prove the character of a person in order to show action in conformity therewith'); *United States v. Jones*, 748 F.3d 64, 70 (1st Cir. 2014) ("Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation chases.").

In *United States v. Stamper*, the court laid out three elements required for evidence to be admissible under Rule 414:

(1) the defendant must be accused of an offense of child molestation;

(2) the evidence proffered must pertain to the defendant's commission of another child molestation; and

(3) the evidence must be relevant.

*United States v. Stamper*, 106 F. App'x 833, 835 (4th Cir. 2004) (unpublished).  In support of admitting evidence of child molestation, the Fourth Circuit in *United States v. Kelly* noted that Rule 414 reflects Congress's view that this type of evidence "is typically relevant and probative." *United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007) (quoting 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (Statement of Sen. Dole)).  Additionally, the court noted that there is a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible."  *Id.* (*quoting United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997)).  Therefore, the court should treat Rule 414 as a rule of inclusion and generally admit evidence of prior sexual offenses. *See Id.*

Evidence that meets the requirements of Rule 414 is still subject to the balancing test of Rule 403.  *Id.*  It "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

The Fourth Circuit has found that, "[u]nlike Rule 404(b), Rule 414 allows the admission of evidence for the purpose of establishing propensity to commit other sexual offenses.  In allowing this evidence, Rule 414 reflects Congress's view that this propensity evidence is typically relevant and probative."  *Kelly*, 510 F.3d at 437; *see also United States v. Larson*, 112 F.3d 600, 604 (2d Cir. 1997) ("The presumption is that the evidence admissible pursuant to these rules is typically relevant and probative, and that its probative value is not outweighed by any risk of prejudice."); *United States v. Bentley*, 561 F.3d 803, 815 (8th Cir. 2009) ("Because propensity evidence is

admissible under Rule 414, the fact that evidence of prior acts suggests a propensity to molest children is not unfair prejudice."); *United States v. Loughry*, 660 F.3d 965, 970 (7th Cir. 2011) (Rule 414 evidence "cannot be excluded under Rule 403 simply because it tends to show that the defendant has a propensity to commit a sex offense.").

Additionally, while evidence of prior sexual acts will always be "emotionally charged and inflammatory," courts must keep in mind that the allegation that the defendant committed the charged crimes will be just as inflammatory. *LeMay*, 260 F.3d at 1030.  In enacting Rule 414, Congress was aware that evidence of child sexual abuse carries a "unique stigma" and risk of jury prejudice. *United States v. LeCompte*, 131 F.3d 767, 769-70 (8th Cir. 1997).  Nevertheless, Congress intended to override concerns about the stigma of such evidence—concerns which had previously excluded prior sexual act evidence—by enacting Rule 414. *Id*.

The Fourth Circuit instructs district courts to consider a number of factors when subjecting Rule 414 evidence to the Rule 403 balancing test, including:

    (1) The similarity between the previous offense and the charged crime;
    (2) The temporal proximity between the two crimes;
    (3) The frequency of the prior acts;
    (4) The presence or absence of any intervening acts; and
    (5) The reliability of the evidence of the past offense.

*Kelly*, 510 F.3d at 437.  In *Kelly*, the Fourth Circuit acknowledged the split between the Ninth and Seventh Circuits as to whether a district court must address these or other specific factors. Compare *United States v. LeMay*, 260 F.3d 1018, 1027-28 (9th Cir. 2001), with *United States v. Hawpetoss*, 478 F.3d 820, 825-26 (7th Cir. 2007). "Although disposition of this case does not require choosing between these views, the Seventh Circuit's more flexible approach seems preferable in view of this circuit's general view that a district court has 'wide discretion' in admitting or excluding evidence under Rule 403." *Kelly*, 510 F.3d at 437, n.3.

i.   **Rule 414 creates a presumption in favor of admission of prior sexual offense evidence, as multiple courts of appeal have recognized.**

a.   Congress intended for Rule 414 to replace Rule 404(b) in sex crimes.

Rule 414 was designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption "in favor of admission" of prior sexual offense evidence. *Floor Statement of the Principal House Sponsor, Rep. Susan Molinari, Concerning the Prior Crimes Evidence Rules for Sexual Assault and Child Molestation Cases* (Cong. Rec. H8991-92, Aug. 21, 1994), included in Advisory Committee's Note to Rules 413 and 414; *available at* 140 Cong. Rec. S12990-01, September 20, 1994; *see also* 140 Cong. Rec. S12990; David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi. Kent. L. Rev. 15, 19 (1994). The legislative sponsors of Rule 414 specified that "[i]n contrast to Rule 404(b)'s general prohibition of evidence of character or propensity," Rule 414 "authorize[s] admission and consideration of evidence of an uncharged offense for its bearing 'on any matter to which it is relevant.' This includes the defendant's propensity to commit sexual assault or child molestation offenses, and assessment of the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense . . . ." 140 Cong. Rec. S12990-01.

The legislative sponsors explained the importance of this evidence in cases where a child is the victim:

> The [proposed] reform effected by th[is] rule is critical to the protection of the public from rapists and child molesters, and is justified by the distinctive characteristics of the cases it will affect. In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sadosexual interest in children— that simply does not exist in ordinary people. Moreover, such cases require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration. In such cases, there is a compelling public interest in

16

admitting all significant evidence that will illumine the credibility of the charge and any denial by the defense.

*Id*.

Congress recognized and intended that Rule 414 would make the admission of similar crimes evidence in federal sex offense cases the norm, and its exclusion the exception:

> The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission. The underlying legislative judgment is that the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.

140 Cong. Rec. H8991-92 (1994) (Statements of Rep. Molinari and Senator Dole) (emphasis added); *see also* 137 Cong. Rec. S3212, S338-3242 (1991); Karp, 70 Chi. Kent L. Rev. at 19.

### b.   Rule 414 Applies to Minors, *Including Minors 14-17*

Rule 414 applies to "evidence that the defendant committed any other child molestation", regardless of the age of the minor. The defense is incorrect in its assertion that Rule 414 does not apply to minors over the age of 14. Child molestation under Rule 414 applies so long as the victims in the evidence the government seeks to admit are "any other child molestation" if the conduct is evidence of conduct that violates any statute in Chapter 110, of title 18 of the United States Code. Sexual exploitation of a child, 18 U.S.C. § 2251(a) is a Chapter 110 violation. In *United States v. Sturm*, 673 F.3d 1274, the 10th Circuit addressed the same issue, and held that Rule 414 was applicable to minors over 13:

> [The defendant's] argument is based on a gross misunderstanding of Rule 414(d)(2). That subsection defines 'offense of child molestation'—independent of the defined term 'child'—to mean 'a crime under Federal law or the law of a State ... that involved ... any conduct proscribed by chapter 110 of title 18, United States Code.' The relevant age of the children victims under this definition, then, is determined by reference to chapter 110 of title 18, which defines "minor" as any person under the age of eighteen[.]

17

*United States v. Sturm*, 673 F.3d 1274, 1284 (10th Cir. 2012).

In *United States v. Foley*, 740 F.3d 1079 (7th Cir. 2014) the Seventh Circuit also held that Rule 414 applies to violations of chapter 110 regardless of the age of the minor.

> Foley argues that his child pornography production charges under 18 U.S.C. § 2251(a) do not count as 'child molestation offenses' under Rule 414 because his victim of those crimes, Minor Male A, was above the age of 14. Foley misreads the rule. Although Rule 414(d)(1) defines a 'child' as a person below the age of 14, it defines "child molestation" to include 'any conduct prohibited by 18 U.S.C. chapter 110' without regard to whether the chapter 110 offense was committed with a person below the age of 14, a 'child' as defined by the Rule. Fed.R.Evid. 414(d)(2)(B). Thus, for purposes of whether Foley's child pornography production offenses were also 'child molestation' offenses under Rule 414, it does not matter whether Minor Male A was under the age of 14.

*United States v. Foley*, 740 F.3d 1079, 1088 n.3 (7th Cir. 2014).

> c.   Multiple circuits, including the Fourth Circuit, have upheld Rule 414.

The Fourth Circuit, like other circuits, has affirmed that evidence admitted under Rule 414 may be considered by the jury for any relevant purpose, including proof that a defendant has sexually predatory propensities. *United States v. Kelly*, 510 F.3d 433, 436-37 (4th Cir. 2007). "Rule 414 allows the admission of evidence for the purpose of establishing propensity to commit other sexual offenses. In allowing this evidence, courts have noted that Rule 414 reflects Congress's view that this propensity evidence is typically relevant and probative." *Id.* at 437; *see United States v. Jones*, 748 F.3d 64, 70 (1st Cir. 2014) ("Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation chases."); *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006) (Rule 414 "create[s] an exception to the general ban on propensity evidence contained in Rule 404(b)"); *United States v. Bentley*, 561 F.3d 803, 815 (8th Cir. 2009) ("Because propensity evidence is admissible under Rule 414, the fact that evidence of prior acts suggests a propensity to molest children is not unfair prejudice.").

18

C.       **Federal Rule of Evidence 404(b)**

Federal Rule of Evidence 404(b) provides that in a criminal case, evidence of other acts of the defendant is admissible for the showing of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." Fed. R. Evid. 404(b). *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").

The Fourth Circuit uses a multi-factor test to determine admissibility of "other acts evidence" under Rule 404(b). *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). To be admitted under 404(b), other acts evidence must meet all the *Queen* factors:

(1)     The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes;

(2)     The act must be necessary in the sense that it is probative of an essential claim or an element of the offense;

(3)     The evidence must be reliable; and

(4)     The evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*Queen*, 132 F.3d at 997.

Such evidence may also be offered to rebut reasonably anticipated defenses. *See United States v. Hanson*, 936 F.3d 876, 882 (9th Cir. 2019) (affirming prior acts evidence of defendant's possession of child pornography under 414 and alternatively 404(b) to rebut defendant's defense about how he obtained the charged child pornography); *United States v. Hardrick*, 766 F.3d 1051, 1055–56

(9th Cir. 2014) (affirming district court's admission of testimony regarding uncharged items of child pornography to prove knowledge and rebut defenses) (*citing United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008) (affirming district court's admission of uncharged child pornography images for the purpose of proving the defendant's intent and knowledge)); *United States v. Norweathers*, 895 F.3d 485, 490-91 (7th Cir. 2018) (affirming the admission under 403 and 404(b) of an uncharged email exchange that the government used to weaken the defendant's anticipated defense that he did not distribute child pornography); *United States v. Salcido*, 506 F.3d 729, 735 (9th Cir. 2007) (per curiam) (affirming district court's admission of defendant's sexually explicit instant messaging chats for the purpose of proving the defendant's knowledge); *United States v. Long*, 328 F.3d 655, 663–65 (D.C. Cir. 2003) (affirming district court's admission of uncharged child pornography photographs found in the defendant's home for the purpose of proving the defendant's possession and intent); *United States v. Forrest*, 429 F.3d 73, 79-80 (4th Cir. 2005) (affirming the district court's admission of pornographic and nonpornographic images of adult males under 403, noting that such images "directly rebutted" the defendant's argument that he did not produce child pornography found alongside the adult images).

Each category of evidence described above satisfies these requirements and is offered to prove the defendant's motive opportunity, intent, preparation, knowledge and absence of mistake, for the reasons explained below.

### D.   Federal Rule of Evidence 401

Federal Rule of Evidence 401 defines relevance as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. A "fact of consequence" is not limited to the ultimate issue or elements in a case, but rather can be any step along a path of inference that leads to an "ultimate fact." *Old Chief v. United States*, 519 U.S. 172, 179 (1997). "Facts of

consequence" also include reasonably anticipated defenses. *United States v. Lewis,* 759 F.2d 1316, 1349 n.14 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985); *United States v. Curtin*, 489 F.3d 935, 940 (9th Cir. 2007); *Rooks v. United States*, No. 4:07CR142, 2014 WL 949100, at *7 (E.D. Va. Mar. 11, 2014).

**ARGUMENT**

   A.   **The Prior Convictions of Child Molestation are Properly Admitted Pursuant to 414 for Any Relevant Purpose, Including as Propensity Evidence.**

   i.   **The defendant is charged with offenses involving child molestation.**

Applying the elements laid out by the court in *Stamper*, the defendant's prior acts of child molestation are admissible under Rule 414.  The defendant is currently charged with sexual exploitation of a minor, coercion and enticement of a minor, distribution and possession of child pornography, which are considered "child molestation" under Rule 414. See Fed. R. Evid. 414(2)(B).  Additionally, the evidence of the prior convictions relates to the child molestation of 4 minor males by the defendant, enticing the victims through payments, and it also relates to the production of child pornography regarding two of the minors he molested. See Fed. R. Evid. 414(2)(c).  Finally, the evidence is relevant to show that the defendant has a sexual interest in minors boys including prepubescent and adolescent boys.  This would negate any defense raised by the defendant that the depictions were not created with any sexual intent, or alternatively that the depictions were not taken by, or at the behest of, the defendant.  The proffered evidence therefore meets all of the requirements of Rule 414.

Furthermore, applying the factors laid out by the court in *Stamper*, the evidence passes the Rule 403 balancing test.  First, the similarity between the offenses is striking.  Regarding his conviction in 2004, the defendant locked a 12 year old and a 14 year old in a room and ordered them to perform sex acts on each other "or there would be consequences," while he likely recorded

the conduct.  Regarding his conviction in 2005, the defendant paid two boys, ages 8 and 11, to put their mouths on his penis.  The defendant committed these acts while he was an adult.

### i. The danger of prejudice does not "substantially outweigh" the probative value of defendant's prior molestation offenses.

Furthermore, applying the factors laid out by the court in *Kelly*, the evidence passes the Rule 403 balancing test.  Because Rule 414 is a rule of inclusion, the law requires exclusion of relevant evidence only when the probative value of evidence is substantially outweighed by the danger of unfair prejudice.  *Kelly*, 510 F.3d at 437.  Evaluation of the evidence of the defendant's other child molestation offense conduct weighs in favor of admitting the evidence at trial.

### a. The defendant's conduct is similar.

First, the similarity between the offenses is clear – all involve the sexual exploitation of minors.  Although the similarity between the exploitation in the charged counts and the defendant's prior convictions is apparent because all involved the defendant personally exploiting the minors, courts have also universally found sufficient similarity between sexual abuse of a child and child pornography trafficking offenses.  *See United States v. Bentley*, 475 F. Supp. 2d 852, 858-59 (N.D. Iowa 2007) ("[P]roducing, possessing or transporting pornographic photographs of children are, in themselves, forms of child sexual abuse. . . . Congress implicitly recognized these similarities between acts of physical sexual abuse against children and child pornography offenses when it commonly defined them as 'offenses of child molestation' within the ambit of Rule 414."); *United States v. Spoor*, 904 F.3d 141, 154–55 (2d Cir. 2018) (upholding the district court's decision to admit a prior conviction of sexual abuse of two boys where the boys "were similar in age to the boys in the videos"); *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) ("[T]he molestations and the evidence supporting the statutory criminal elements were similar in character, *i.e.*, establishing [his] sexually deviant mental state ...."); *United States v. Brand*, 467

F.3d 179, 198 (2d Cir. 2006) (noting in the analogous Rule 404(b) context that "possession of child pornography by itself shares a connection or similarity with pedophilia"); *United States v. Olson*, No. CR 16-30-BLG-SPW, 2017 WL 2226555, at *2 (D. Mont. May 19, 2017), *aff'd*, 755 F. App. 716 (9th Cir. 2019).  For example, in *United States v. Emmert*, the Eighth Circuit held that a district court did not abuse its discretion when it allowed Rule 414 evidence of prior sexual abuse where the prior "sexual abuse and [current] child pornography victims were similar in age, and [the defendant] performed or possessed images depicting similar explicit acts on each victim."  825 F.3d 906, 909 (8th Cir. 2016); *United States v. Thornhill*, 940 F.3d 1114, 1119 (9th Cir. 2019).

**b.  The defendant's conduct is sufficiently close in time.**

The defendant's prior convictions and the charged conduct in each charged count is also sufficiently close in time.  The convictions were from 2005 and 2006, and the defendant served time in prison, and the offenses charged in the indictment start in 2015.  Cases on joinder and severance are instructive here.  Joinder has been held appropriate when offenses occurred many more years apart than the 9-10 years between the defendant's prior convictions and his exploitation of John Doe 1.  *See United States v. Kelly* (20 years); *United States v. Rice*, 347 F. App'x 904, 905 (4th Cir. 2009) (unpublished) (between 10 and 18 years prior to the charged offenses).  Cases from other circuits have similarly held that Rule 414's temporal requirement is met when the sexual molestation acts are separated by many years.

Additionally, "[t]he legislative history of Rule 414 reveals that Congress meant its temporal scope to be broad, allowing the court to admit evidence of Rule 414 acts that occurred more than 20 years before trial."  *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997); *see also United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001) ("When Rule 414 was enacted, Congress expressly rejected imposing any time limit on prior sex offense evidence.").  In *Larson*, defendant

was convicted of interstate transportation of a minor with intent to engage in criminal sexual conduct in violation of § 2423(a). *Larson*, 112 F.3d at 602. The court admitted the testimony of a witness who alleged that Larson similarly victimized him when he was a minor 16 to 20 years earlier. *Id.* The court found that the 16-to-20-year-old events underlying the witness's testimony were "not so remote in time so as to constitute unfair prejudice to the defendant." *Id.* Moreover, the court found that that "testimony of uncharged acts of sexual conduct is admissible under either Rule 404(b) or 414 because it goes to the presence of a common scheme or plan on the part of the defendant and also is relevant to the defendant's intent and motive in the commission of the charged offense." *Id.* at 602-03; *see also Kelly*, 510 F.3d at 437.

In *United States v. Meacham*, the defendant was charged with transporting a minor in violation of § 2423, and the court affirmed the admission of evidence of child molestation occurring approximately *30 years* before trial under either Rule 404(b) or Rule 414). 115 F.3d 1488, 1490, 1495 (10th Cir. 1997). Similarly, in *Gabe*, where the defendant was charged with abusive sexual contact with a child under the age of 12 and aggravated sexual abuse, the Eighth Circuit held that the district court did not abuse its discretion in admitting Rule 414 testimony that the defendant had sexually abused a seven-year-old *twenty years earlier*. *Gabe*, 237 F.3d at 956, 960. The court agreed that the testimony was "highly probative" because the abuse alleged by the now-27-year-old "was almost identical to the abuse of [the minor] alleged in Count One. Both were young girls of six or seven years at the time of the offenses; both were related to [the defendant]; and the sexual nature of the offenses was similar." *Id.* at 959; *see also United States v. Emmert*, 825 F. 3d 906, 909 (8th Cir. 2016) (holding that defendant's conviction for sexual abuse of a minor twenty years before the present offense was properly introduced under Rule 414).

Thus, the prior convictions and the conduct charged in the Superseding Indictment is well

within the timeframe of Rule 414's temporal requirement.

### c.  The defendant's conduct was frequent.

As the facts demonstrate, the defendant has a long-standing sexual interest in children that continued from 2004 through his arrest in 2019.  The defendant's conduct includes threatening and paying prepubescent and adolescent minor males to engage in sex acts in 2004–2005, to recording his rape of an adolescent male (John Doe 1) in 2015, and using payments and threats to entice prepubescent and adolescent males to produce and live stream themselves while engaging in sexually explicit conduct, to engage in sex acts with each other, and in one case, to engage  in sex acts with the defendant—in 2018 through 2020.

### d.  There have been no intervening circumstances.

There have also been no relevant intervening circumstances.  Thus, this factor also weighs in favor of admitting evidence of the defendant's conduct relating to child molestation, since no intervening facts between the convicted conduct and the charged conduct occurred to lessen the probative value or increase the prejudicial effect of the uncharged conduct.  Instead, the facts detailed above show that the defendant has consistently engaged in conduct demonstrating his sexual attraction to young boys.

### e.  The evidence is reliable.

Finally, the evidence is reliable, as evidenced by defendant's conviction in the Circuit Court for Baltimore City and his requirement to register as a sex offender.

When viewing all of these factors together, it is clear that the evidence of the defendant's prior convictions for child molestation passes the balancing test of Rule 403. Additionally, if there is any prejudicial effect of admitting this evidence, it is the same as the probative value of the evidence – it tends to prove that the defendant has a sexual attraction towards children. *See Kelly*,

510 F.3d at 438; *Rice*, 347 F. App'x at 906.  Therefore, the evidence is clearly not *unfairly* prejudicial and is admissible under Rules 414 and 403.[10]

### f.   The evidence is also admissible under Rule 404(b).

In addition to being specifically allowed under Rule 414, the evidence of the defendant's prior convictions for child molestation offenses of young boys is highly relevant and probative under 404(b) to prove that the defendant is the user of the Instagram accounts that communicated with the victims, and thus is the individual who produced and caused the production of the files in the iCloud, and is the person who coerced and enticed the victims.  It is also relevant to the defendant's identity as the person who made the depictions of John Doe 1 as charged in Counts 1 and 2.  It is unmistakable that the defendant's sexual abuse of the minor boys in 2004 and 2005 is evidence that the defendant is sexually attracted to minor boys, that he had the motive to produce the sexually explicit images in Counts One through Twenty-Seven, and that he intended them for his own sexual stimulation.  *Rice*, 347 F. App. at 906; *Kelly*, 510 F.3d at 438.   Similarly, the particular way, or modus operandi, that the defendant committed the molestation in 2004 and 2005 is highly similar to the counts charged in the superseding indictment.

Moreover, such evidence also is relevant to disprove potential defenses.  The defendant may claim that he did not produce or aid and abet the production of all or some of the images, or that he merely obtained the files from others or that others, who had access to his accounts, are responsible for the exploitive conduct, or that the files were produced or maintained by mistake. The defendant's sexual abuse of the four young boys in 2004 and 2005 is clearly relevant to the

---

[10]  The court in *Stamper* suggested that in child molestation cases, Rule 414 replaces Rule 404(b) for admissibility of prior bad acts involving child molestation. *Stamper*, 106 Fed. App'x at 835 (citing *United States v. Castillo*, 140 F.3d 874, 879 (10th Cir. 1998)).  Out of an abundance of caution, however, the government offers the Rule 404(b) analysis discussed below as an alternative to the admission of  evidence of child molestation based on Rule 414.

identity of the defendant and the person responsible for the sexually explicit depictions in Counts

One through Twenty-Seven, and that he did not take or maintain them by mistake or accident.  The

evidence is also admissible under Rule 404(b) to show a common scheme or plan.  *Larson*, 112

F.3d at 602.

**B.** **Jones' Attempted Sexual Exploitation of Two Adolescents By Using Facebook to Entice Them to Send Him Child Pornography Properly Admitted Pursuant to 414 and 404(b)**

Jones' conduct towards Yandell Brown (13) should be examined under 414 and his conduct

toward Gregery King (15) under 404(b).  No matter the rule, the evidence is admissible.  Jones'

conduct on *his Facebook account* is precisely the same conduct of Instagram users lorpeee,

lorpeeelove, and gmc.boi.  In both, the user communicates online with minors and offers a benefit

in return for sexually explicit images of the minor.  On Facebook, Jones, like the anonymized and

faceless Instagram user, focuses on adolescent males and offers to pay them for sexual images.

On Facebook, Jones, like the Instagram user, asked the minors for images of their buttocks, anus,

and face.  The defendant's conduct exploiting minors using his Facebook account is remarkably

similar to the conduct of the Instagram users, and is therefore directly relevant to the identity of

the Instagram user.  Plainly, the Facebook evidence makes it more likely that Jones is the user of

the Instagram accounts.  Additionally, the Facebook conduct reflects the same common scheme or

plan as the Instagram user, and further reflects the defendant's motive and intent – demonstrating

his sexual attraction to adolescent males.

**C.** **The Chats and Additional Files Relating to the Defendant's Exploitation, Coercion and Enticement of John Does Two through Sixteen is Properly Admitted Pursuant to 414 and 404(b)**

As mentioned above, relating to days other than the dates alleged in Counts 2 through 27,

the government intends to offer evidence of additional chats between the victims and the Instagram accounts, and videos sent by the victims and saved to the iCloud account.

As to the chats, much of the exploitation of the victims is demonstrated in the chats. The user of the accounts (gmc.boi, lorpeee, lorpeeelove) typically stated his age and gender. He frequently told the victims that he can get them thousands of Instagram followers. The conversations moved to requests for photos, and talk of sexual topics or sexual images. The victims were often reluctant, and the enticement moved from photos to "sexy" photos, to face photos, to naked photos, to buttocks, anus, penis, and penetration videos—*and it occurred over time*. The chats include numerous references to video calls and files sent for which there is no record. The chats often reference images and videos that were exchanged that have not been recovered—not in the Instagram records and not in the iCloud account. The chats that precede the charged counts, often by days, are often the most explicit examples of depictions being sought, the benefits being offered, and the method of coercion. In fact, many of the charged counts occurred on days where there is little or no accompanying messages to explain the exploitation. Thus, the chats on the days other than the charged counts are necessary to establish the basic elements of the offenses. The government does not intend to publish the "full" chat of each victim to the jury, but instead has created a "selected" chat for each victim that includes the relevant portions of communication.

Furthermore, these chats occurred within the timeframe specified in the coercion and enticement counts (28-42), and were patently part of the causing and attempting to cause the victims to produce, live stream, and distribution child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(2), and Md. Code, Crim. Law § 11-207(a)(1), as specifically listed in the indictment. As such the chats are intrinsic to the charged counts.

In addition to the chats, the government intends to publish videos found in the iCloud account. Similar to the videos that make up the charged counts of child exploitation (Counts Three through Twenty-Seven), these additional videos were saved to the iCloud account, were created either by using iPhone screen-record, phone-to-phone recording, or files sent by the victims that were downloaded from the Instagram chats. Many of these additional videos include additional exploitive conduct, including the voice of the Instagram user, as well as a recording of portions of the chat between the users. The iCloud account included dozens (at least) of these files – files of child pornography of the John Doe victims on dates other than those charged in the indictment. Of those dozens of files, the government intends to publish *only 9 files* (6 videos and 3 images). Each of the files has an independent relevance, and is necessary to prove an element of the offense.

For example, in one file, IMG_0028.mov, John Doe 2 is depicted engaging in sexually explicit conduct. During the video, voices are heard in the background of the Instagram user lorpeee. A voice in the distance calls out, "Man." The government will introduce evidence that the defendant's nickname is "Man," and that the voice calling him is his Uncle Vernon, with whom the defendant resided in 2019 when the video was created. Additionally, lorpeee's voice is heard responding to his Uncle Vernon. The government will call a witness who will identify the voice as the defendant's. As mentioned above, the critical issue in this case is the identity of the Instagram user lorpeee (who also uses the accounts lorpeeelove and gmc.boi). The Instagram accounts are anonymized through the use of aliases, and the user's face is never shown on the charged files. This video, in which lorpeee exploits John Doe 2 during the period of the indictment, with the defendant's voice, is critical evidence of the defendant's identity as the user of the lorpeee account, and is therefore admissible under Rule 404(b).

Another video, RPReplay_Final1559496495.mp4, does not depict sexually explicit

conduct at all, but is a video John Doe 3 playing a video game while lorpeee records.  At one point during the video, when lorpeee switches applications on the phone being recorded, the Google Maps application is displayed, and the starting location of the direction is **4819 Aberdeen Avenue**, the defendant's address.  Thus, this video of lorpeee and John Doe 3 is directly relevant to the defendant's identity as the user of the lorpeee account.  Another video of John Doe 3 that does not depict child pornography but the defendant has nonetheless objected to in IMG_1150.mov.  In this video, lorpeee is asking John Doe 3 to say, "give you head."  John Doe 3 is noticeably upset, and repeatedly asks lorpeee to stop making him say that, and refers to it as "the nasty stuff."  This video is relevant to prove the defendant's common scheme and plan, and most critically, his identity. While continuing to manipulate and sexually exploit John Doe 3 as he does with the other victims, lorpeee uses his hand to manipulate the screen that he is recording John Doe 3 on.  As his finger moves across the video, *the defendant's distinctive finger tattoo is visible*.  Thus, this video is relevant and necessary to prove the defendant's identity as the Instagram user lorpeee who is exploiting John Doe 3.

Video RPReplay_Final1561687704.mp4 is from June 27, 2019, and depicts John Doe 5's buttocks and penis.  Although this video is not a charged count, the Instagram messages immediately prior to this video show gmc.boi explicitly requesting the video of sexually explicit conduct.  Days later, on July 3, 2020, in Count 16, John Doe 5 (age 11) is depicted masturbating his exposed penis.  Unlike days earlier however, there are no chats immediately preceding this video that provide context for sending of the video.  The defense would have the government merely play the video, unable to show that John Doe 5 had been coerced into sending a similar video by the same user days earlier, and that the sexual depictions had been specifically requested. This evidence is critical to the government's burden of proving that gmc.boi caused the production

of the video, and that he coerced and enticed John Doe 5 to engage in the conduct. Without this evidence, the defense will argue that John Doe 5 may have sent the video to gmc.boi entirely on his own, without any suggestion or coercion of anyone.

Regarding additional evidence relating to John Doe 6 and John Doe 7, the image file …8880.jpg is an image of child pornography that gmc.boi (the defendant) sent to John Doe 6. The image is a screenshot of the livestreamed image of John Doe 6's penis next to his sleeping brother's face. A reasonable inference based on the chats is that John Doe 6 live streamed that conduct and depiction to the defendant, the defendant took a screen shot, and then sent that image back to John Doe 6. The import is unmistakable – the defendant was telling John Doe 6 that he had him. It was extortion, and the government is entitled to show the jury how the defendant coerced and enticed John Doe 6, and how the defendant caused him to stream, moments later, in Count 18, a video of his penis next to the face of his sleeping brother.

Finally, the government intends to show one other image of child exploitation to the jury, necessary to prove the exploitation of John Doe 5 and John Doe 14. On April 3, 2020, Instagram user gmc.boi sent an image of an exposed penis to John Doe 14. The same image gmc.boi sent to John Doe 14 was found on the defendant's phone (1B3) on the day of his arrest, September 1, 2020. The exact same photo sent by the anonymized exploiting Instagram user gmc.boi was found on the defendant's phone. This is powerful evidence of the defendant's identity as gmc.boi and the government is entitled to present such identity evidence to the jury.

        i.    <u>The chats and files of other conduct relating to John Does Two through Sixteen mentioned above is also admissible as intrinsic to the charged conduct.</u>

All of the evidence is evidence is part of the defendant's overall conduct and is thus intrinsic to the charged counts in the indictment. "Evidence of uncharged conduct is not "other crimes" evidence subject to Rule 404 if the uncharged conduct "arose out of the same series of

transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial." *United States v. Siegel,* 536 F.3d 306, 316 (4th Cir. 2008), *citing United States v. Kennedy,* 32 F.3d 876, 885 (4th Cir. 1994).

Here, the defendant is charged with the coercion and enticement of each victim for a period of time, days, months, and even years, depending on the victim.  The chats and files early in the communication are part of the count of coercion and enticement.  The conduct consists of grooming and other exploitative conduct that completes the story of the defendant's exploitation of the victims.  While the government has significantly pared down the evidence to be presented in the interest of time, all of the selected evidence is necessary to prove the offense, and should be admitted.

### D. The Files of Jones' Enticement, Exploitation, and Molestation of the Minor Victims that Was on His Devices Are Properly Admitted Pursuant to 414 and 404(b)

As discussed above, the defendant's digital devices contained powerful evidence that the defendant was the user of the Instagram accounts and was the person who exploited all of the victims.  Because this evidence is of conduct that violates chapter 110, it is admissible under Rule 414, , and is thus "child molestation" under Rule 414.   Below is a summary of some of those files:

The iPhone XS max that was in the defendant's bed (1B3/Exhibit 13.2):

- An audio recording discussing how the speaker gets paid and uses Instagram pages, he states that he has been to Steubenville, Ohio (the hometown of John Does 2, 3, 4, and 13), where he met with John Doe 2 who he mentions by name, stated that he sent John Doe 2 a phone, and discussed asking for "videos of ass and dick";

- An audio recording talking about a minor male (10) with a large penis and a nice ass, discussing trading Instagram followers for sexual acts;

- A photo of John Doe 3's exposed genitals;

- A video of John Doe 2 performing oral sex in a vehicle, and the other person has a tattoo that is the same as the defendant's;

-       An image of John Doe 10;

-       The same video of John Doe 10 that is charged in Count 21;

-       Videos of John Doe 12 and John Doe 14 (2 videos) masturbating;

-       An image of an exposed penis, the same image that gmc.boi sent to John Doe 5 and to John Doe 14.

The iPad from the defendant's dresser (1B7Exhibit 13.4):

-       Multiple naked images of John Doe 3;

-       An image of John Doe 6's penis next to the face of his brother, John Doe 7 (this is the same photo that gmc.boi sent to John Doe 6 as extortion;

-       A photo of John Doe 8, nearly identical to an image in Count 19;

The iPhone that was on his person (1B18/Exhibit 16.1):

-       **A video depicting John Doe 3 and Jones in a car together on December 24, 2019.  Both of their faces are clearly shown, and both are performing oral sex on each other.**

-       A video in the Best Western hotel in Steubenville, Ohio on August 2, 2020, depicting Jones laying on the hotel bed and John Doe 3 performs oral sex on Jones. Jones face is clearly depicted;

-       A video taken in the Best Western hotel in Steubenville, Ohio on August 2, 2020, of John Doe 3 in the hotel shower, and Jones can be heard telling him what to do.

-       A video of John Doe 14 masturbating, and Jones' tattoo on his right hand is observed in the video.

-       A video of John Doe 16 masturbating.

In addition to Rule 414, the evidence above is all clearly admissible under Rule 404(b). The existence of any connection to the victims on the defendant's phone is relevant to Jones identity.  Evidence that his personal phones have any connection to numerous victims in this case is probative of the defendant's identity as the user of the Instagram account—the person who exploited the victims.  That the evidence not only connects the defendant to the victims, but to the

*sexual exploitation* of these victims, is even more probative.  Further, that some of these files are the exact same files that the defendant stands accused of producing (but will presumably deny any connection to), is even more powerful evidence of identity, motive, intent, opportunity, and lack of accident.  Last, that the videos depict the defendant engaging in sex acts with a minor victim in this case, is the clearest example possible of evidence probative of identity.  All of the files should be admitted.

E.  **The evidence of other acts referenced above is also admissible as intrinsic to the charged conduct.**

All of the evidence inis evidence is part of the defendant's overall conduct and is thus intrinsic to the charged counts in the indictment.  "Evidence of uncharged conduct is not "other crimes" evidence subject to Rule 404 if the uncharged conduct "arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial." *United States v. Siegel,* 536 F.3d 306, 316 (4th Cir. 2008), *citing United States v. Kennedy,* 32 F.3d 876, 885 (4th Cir. 1994).  In the alternative, the evidence is also admissible under Rules 404(b) and 414.

F.  **Under Rule 403, the probative value of the evidence substantially outweighs the risk of unfair prejudice.**

Under a Rule 403 balancing assessment, the pieces of evidence described above each have a greater probative value that substantially outweighs any danger of unfair prejudice.  To avoid the risk of unfair prejudice or cumulative evidence, the government is seeking to admit only a limited amount of the universe of potential exhibits and testimony that fits within the categories set forth in Rule 404(b), and that directly bear on the defendant's intent/ knowledge for the counts of the Second Superseding Indictment.  The probative value of the limited evidence set forth above is especially high in a case like this that involves enticement and sexual exploitation of a child, where

the government must prove the defendant's specific intent to use a child for the purpose of producing depictions of sexually explicit conduct.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the United States respectfully requests that this Court permit the admission of this evidence at trial.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____

Paul E. Budlow
Colleen E. McGuinn
Assistant United States Attorneys