IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,          *

    Plaintiff,          *

v.          *          Criminal Case No. GLR-20-0283

GARY ROCKY JONES,          *

    Defendant.          *

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Gary Rocky Jones's Motion for Judgment of Acquittal and New Trial under Federal Rules of Criminal Procedure 29 and 33. (ECF Nos. 137, 166).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 207.1, 105.6 (D.Md. 2023). For the reasons set forth below, the Court will deny the Motion.

## I.   BACKGROUND

### A.   Procedural Background

Jones was charged by indictment with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) on September 1, 2020. (Govt's Opp'n Def.'s Mot. ["Opp'n"] at 2, ECF No. 194). On September 2, 2020, the Federal Public Defender ("FPD") was

---

[1] Also pending before the Court is Jones's Motion for Leave to File Sealed Materials (ECF No. 170). Jones seeks to file under seal a corrected version of the previously sealed Exhibit 3 of his Memorandum in Support of Post-Trial Motions. This Motion for leave to file sealed materials will be granted for the reasons set forth therein.

appointed to represent Jones at an initial appearance. (Def.'s Mem. Supp. Post-Trial Mots. ["Mot."] at 4, ECF No. 166). Jones entered a plea of not guilty at the September 9, 2020 arraignment. (Id.). That same day, the Court held a detention hearing, and he was detained. (Id.). Jones has been detained ever since. (Id.).

The superseding indictment was filed on February 1, 2022, charging Jones with 46 counts of offenses involving Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2252(a) and 2256; Coercion and Enticement, in violation of 18 U.S.C. § 2422(b) and 2427; Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and 2256; Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(5)(B) and 2256; and, Commission of a Felony Crime Involving a Minor by a Registered Sex Offender, in violation of 18 U.S.C. § 2260A. (Id.).

Following a 10-day trial beginning on September 11, 2023, a jury convicted Jones of all counts of the superseding indictment. (ECF No. 131). On September 28, 2023, the FPD withdrew as counsel, and the law office of Joseph A. Balter was appointed to represent Jones. (See Mot. at 4). Jones filed the pending Motion for Judgment of Acquittal and New Trial under Federal Rules of Criminal Procedure 29 and 33 on October 10, 2023. (ECF No. 137). The Government filed an Opposition on July 5, 2024, (ECF No. 194), Jones filed a Reply on August 12, 2024, (ECF No. 200), and the Government filed a Response to Jones's Reply on August 21, 2024, (ECF No. 203).

## B.    Factual Background

### 1.    Pretrial Proceedings

The trial was initially scheduled for July of 2022 but was postponed until September

11, 2023 at the request of defense counsel. (ECF Nos. 37, 43, 64). On September 5, 2023, Jones appeared before Chief Magistrate Judge Beth P. Gesner for an initial appearance and arraignment on the superseding indictment, as well as a <u>Lafler-Frye</u> hearing. (ECF No. 141). During the hearing, Jones advised the court he understood the charges in the superseding indictment and the maximum penalties he faced if convicted. (<u>Id.</u> at 8–9). During the <u>Lafler-Frye</u> portion of the hearing, the government communicated that they would consider a plea where Jones would be sentenced to no less than 25 years, and the government would seek a life, or life-equivalent sentence. (<u>Id.</u> at 12). On September 6, 2023, Jones wrote a <u>pro se</u> letter to Judge Gesner claiming that during his initial appearance, "I didn't understand everything my lawyer told me to say yes to everything . . . [M]r. [B]udlow didn't give me time to think about the deal . . . ." (ECF No. 101).

This Court held hearings on pretrial motions on September 5 and 7, 2023. (ECF Nos. 92, 95). At the hearing on September 5, 2023, Jones requested a continuance, and counsel for Jones stated that "Mr. Jones would like more time to carefully review the discovery . . . before deciding whether to proceed to trial." (ECF No. 144 at 12–13). The Court denied Jones's request citing the length of time the case had been set for trial already, Jones's prior opportunities to review discovery in advance of trial, and defense counsel's preparedness for trial. (<u>Id.</u> at 17).

### 2. The Morning of Trial

After close of business on September 8, 2023 and over that weekend, the FPD advised the Court that Jones wanted to discharge his counsel. (ECF No. 147 at 2).

Immediately prior to the start of jury trial, the Court received reports that over the weekend Jones threatened his attorney and the judge. (ECF No. 147 at 2–4, 10). On September 11, the case was called for the start of jury trial as scheduled. (Id.). A voluminous jury pool had been summoned and was present at the courthouse. (Id. at 8). Prior to voir dire, the Court convened counsel and Jones. (Id.). Jones refused to wear civilian clothes and was brought into the courtroom in shackles because of his threats over the weekend. (Id. at 8–11). The Court informed Jones that an attorney inquiry hearing would be held to see if he would be able to discharge his counsel. (Id.). The Court noted that Jones's request to discharge his attorneys was untimely and appeared to be an attempt to manipulate the Court's docket. (Id. at 8–9). In response, the defendant interrupted the Court and shouted, "I was abused by my attorneys . . . They abused me. They sexually abused me over at the city jail." (Id. at 11).

At the request of this Court, Magistrate Judge Matthew J. Maddox held an attorney inquiry hearing that same day. (ECF No. 143 at 1–2). During the hearing Jones was disruptive, and Judge Maddox removed him from the courtroom. (Id. at 26–28). Judge Maddox found that Jones did not indicate that he wished to proceed self-represented and only requested a new attorney. (Id. at 29). Judge Maddox denied Jones's request for new counsel, noting that the request was untimely as the case had been pending since 2020, counsel had already engaged extensively with the voluminous discovery, meaningful trial proceedings had already taken place, jurors had already been summoned to the courthouse, and there had not been any indication of communication issues between Jones and his counsel until that morning. (Id. at 30–31; ECF No. 102 at 2–5). Judge Maddox also noted:

> A lot of these issues appear based upon the information presented to me to be contrived. I understand that there is a mental health history that involves emotional issues and dissociative issues, but there's been no indication of the dissociative issues being so severe as to cause any sort of breakdown in communication between counsel and Mr. Jones until last week. And last week is key because last week is when we had pretrial conferences taking place over the course of two days and rulings being made adverse to Mr. Jones. I find based upon the significant number of charges and the significant penalties that may result from a conviction in this case that there may be a cause on Mr. Jones's part to delay the court calendar and disrupt the court calendar and that is an explanation for some of the recent disruptive behaviors and outbursts that we've been discussing today.

(ECF No. 143 at 30). In an opinion memorializing the hearing, Judge Maddox wrote that Jones's "conduct surrounding his request for substitution of counsel is fully consistent with a tactic to manipulate court processes in an effort to delay the trial." (ECF No. 102 at 4).

The parties then returned to this Court where Jones for the first time asserted "I can represent myself." (ECF No. 147 at 17). The Court notified Jones that his request was untimely to which Jones responded "Nigga, you's crazy." (Id. at 17–18). Jones continued to interrupt and argue with the Court, repeatedly stating "[s]he mad now," and he was eventually removed from the courtroom. (Id. at 17–19). The Court relayed to counsel that "during the course of previous proceedings Mr. Jones has not been otherwise disruptive" and in this and prior proceedings Jones was "acknowledging certain points," "responsive to questions," and "shaking his head affirmatively" to various arguments. (Id. at 20). The Court found that Jones "has been manipulative for the purposes of inappropriately attempting to delay this proceeding and the trial." (Id. at 22). The Court explained to counsel that Jones was welcome to sit at counsel's table if he refrained from disrupting the

proceedings, but if he became disruptive again he would be removed. (Id. at 22–23).

After a recess, Jones was permitted to return to the courtroom, again in shackles. (See ECF No. 194-10 at 8). The Court indicated that it planned to select a jury and finish opening statements that day. (Id. at 5). Jones then claimed that he was not receiving his insulin, a medication required to treat his diabetes. (Id.). The U.S. Marshals confirmed that Jones had refused his medication that morning at CDF. (Id.). At defense counsel's request, the Court agreed to send Jones back to CDF get his medication and explicitly warned Jones, "If you choose not to take your medication and I'm advised that you have not taken your medication tomorrow morning, I will take that as an effective waiver of your right to be present during the course of the proceedings." (Id. at 15–16). In response, Jones threatened the Court: "You lucky I can't get out this chair. Because I'll bust you upside your head. You lucky I can't get out of this chair." (Id. at 17). Jones was removed, and the Court found the record established that Jones "has demonstrated a complete threat and decided he cannot comply with decorum of the court. And so at this point in time he's waived his right" to be present. (Id.). The Court then brought in the prospective jury panel, took roll call, gave the prospective jurors initial instructions and announcements, and adjourned for the day. (Id. at 21–37).

### 3.    Remainder of Trial

The next morning, the Court was advised that Jones again refused to take his medications. (ECF No. 152 at 2). The Court believed that Jones would arrive at the courthouse shortly, and stated to the attorneys:

> And I certainly acknowledge that generally speaking Rule 43

mandates that he be physically present, including through all of voir dire and all of trial. There are, of course, exceptions to that. When the defendant is disruptive he may under certain circumstances be removed from the courtroom. And given where we are as of yesterday and where the defendant was in this Court's mind and I believe the Court found to be disruptive, indeed threatened physical violence to the Court upon his exit and indicating that if he weren't in the chair that he would commit violence against me. In light of that I'm going to have the defendant remain shackled. However, I'm going to have a towel or cloth or whatever put over the shackles to prevent the prospective jurors from seeing that he is shackled.

(Id. at 3–4). Defense counsel requested a competency evaluation which the Court denied based on the current record but noted that "in the event that there's circumstances that develop . . . which have an indication of a present, clear mental illness that would meet the qualifications for a challenge on competency then I'll certainly hear from you." (Id. at 10–12). The Court was then informed that Jones had again refused to come to the courthouse. (Id. at 20). The Court found that Jones had waived his right to be present. (Id.). The Court then had the prospective jury panel enter the room and selected the jury. (Id. at 26).

The next morning, September 13th, the Court again was notified that Jones refused his medication and refused to come to the courthouse. (ECF No. 153 at 3). The Court found that Jones had waived his right to be present and heard witness testimony. (Id. at 3). The following morning, the Court received notice that Jones had taken his medication but still refused to come to Court, and the Court again found that Jones had waived his right to be present and proceeded with taking witness testimony. (ECF No. 154 at 3). Every morning for the remainder of the trial, the Court received notice that Jones refused to come to the courthouse and refused to take his morning medication, though he consistently took his

evening medications. (Opp'n at 26). Every morning for the duration of trial, the Court found that there was not reasonable cause for a competency hearing and that Jones knowingly and voluntarily waived his right to be present. (See, e.g., ECF No. 158 at 2–3).

During trial, the FPD became aware that Jones had filed an institutional complaint against them that placed them in an adversarial position to Jones, and the FPD moved to withdraw as counsel. (ECF No. 166-13 at 4–5, 16). When the Court indicated it would like to consider conducting an evidentiary hearing relating to this issue, the FPD proposed deferring a potential evidentiary hearing until after the trial, which the Court agreed to. (Id. at 13–15). The trial proceeded through the jury verdict without Jones's presence, and the jury ultimately convicted Jones of all 46 counts of the superseding indictment. (ECF No. 117 at 1). Following trial, FPD withdrew as counsel for Jones, and Joseph A. Balter, Esq. was appointed.

## II.   DISCUSSION

### A.   <u>**Standard of Review**</u>

Rule 29 of the Federal Rules of Criminal Procedure provides that a defendant may renew a motion for a judgment of acquittal after a guilty verdict. Fed.R.Crim.P. 29(c)(1). Rule 33 provides that, upon a defendant's motion, "the court may . . . grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). The Court "should exercise its discretion to grant a new trial sparingly," and a jury verdict should only be overturned "when the evidence weighs heavily against the verdict." <u>United States v. Perry</u>, 335 F.3d 316, 320 (4th Cir. 2003) (citing <u>United States v. Wilson</u>, 118 F.3d 228, 237 (4th Cir. 1997)).

B.    <u>Analysis</u>

Jones makes three arguments as to why the jury's verdict should be overturned and he should be granted a new trial. (Mot. at 3). First, he argues that his right to counsel was violated when his request to discharge counsel and his request to proceed self-represented were denied. (<u>Id.</u> at 16–22). Second, he argues that he was improperly denied the right to be present at trial. (<u>Id.</u> at 23–26). Finally, he argues that the court erred when it did not order a competency evaluation. (<u>Id.</u> at 26–27). The Court will address each argument in turn.[2]

_____

[2] Jones also argues that an evidentiary hearing is necessary to resolve factual issues relevant to the pending motion. (Mot. at 27–28). A district court has "broad discretion" in determining whether to hold an evidentiary hearing on a motion for new trial. <u>United States v. Smith</u>, 62 F.3d 641, 651 (4th Cir. 1995). "This is because 'the acumen gained by a trial judge over the course of the proceedings' makes the court 'well qualified' to rule on a motion for a new trial without an evidentiary hearing." <u>United States v. Tzeuton</u>, 370 F.App'x 415, 421 (4th Cir. 2010) (quoting <u>United States v. Hamilton</u>, 559 F.2d 1370, 1373–74 (5th Cir. 1977)). "[T]o obtain an evidentiary hearing, a defendant must identify specific facts and circumstances outside the record which, if proven, would entitle him to a new trial." <u>United States v. Sands</u>, 968 F.2d 1058, 1066 (10th Cir. 1992). Jones here has not identified any specific facts outside the record which would entitle him to a new trial. Jones has not proffered any new evidence and has not identified any facts in dispute. The Court finds that no evidentiary hearing is necessary at this time.

Jones also objects to the government's access and use of his medical records in support of their Opposition to the Motion Judgment of Acquittal and New Trial. (Def.'s Reply in Supp. Mot. for J. of Acquittal and New Trial ["Reply"] at 6–7, ECF No. 200). Jones argues that because the medical records were not before the Court when the Court's decisions regarding counsel, presence, and competency evaluations were made, they should not be used in post-trial briefing. The Court notes that the medical records are highly relevant to the pending Motion, as Jones put his medical records at issue by arguing that this Court erred in not granting him a competency hearing. However, the Court need not make a determination on this issue because the Court does not consider the medical records in its analysis on the pending Motion. Even if the Court were to find that the government's access and use of Jones's medical records was improper, the outcome of the pending

### 1.      Right to Counsel

Jones first argues that he is entitled to judgment of acquittal and a new trial because his right to counsel was violated when the Court denied his requests to discharge counsel and to engage in self-representation on the morning of trial. (Id. at 16–22). The Court disagrees and finds that it properly denied Jones's requests to fire his counsel and to proceed self-represented.

### a.      Motion for Substitution of Counsel

The Sixth Amendment affords a criminal defendant the right to counsel of his choosing, United States v. Smith, 640 F.3d 580, 587 (4th Cir. 2011), however a defendant "has no right to have a particular lawyer represent him and can demand a different appointed lawyer only with good cause." United States v. Quintero-Acosta, 355 F.App'x 685, 687–88 (4th Cir. 2009) (quoting United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988)). The Fourth Circuit instructs that courts considering motions to substitute counsel look to three factors: "(1) the timeliness of the motion, (2) the adequacy of the district court's inquiry into the defendant's complaint about counsel; and (3) whether the defendant and counsel experienced a total lack of communication preventing an adequate defense." Quintero-Acosta, 355 F.App'x at 688. These factors are weighed against "the district court's interest in the orderly administration of justice." Id.

---

Motion for Judgment of Acquittal and New Trial would be the same, so Jones is not unduly prejudiced.

Here, Jones's request to discharge his counsel, made for the first time on September 8, 2023, the business day before trial, was not timely. "[J]udges have wide latitude to deny a late-breaking motion for substitution of counsel." United States v. Hunt, 99 F.4th 161, 183 (4th Cir. 2024). Motions to substitute counsel have been denied when made as far as ten days before the start of trial. See Quintero-Acosta, 355 F.App'x at 688; see also Gallop, 838 F.2d at 108 (finding a motion for substitution of counsel untimely when made five days before trial and found to be a ploy to delay the case); Hunt, 99 F.4th at 183 (finding district court did not err in denying motion to appoint counsel filed on the eve of trial). Further, a "request for change in counsel cannot be considered justifiable if it proceeds from a transparent plot to bring about delay." Quintero-Acosta, 355 F.App'x at 688 (quoting Gallop, 838 F.2d at 108). Both this Court and Judge Maddox found that in seeking to discharge his counsel just before trial, Jones was attempting to manipulate the Court's docket. (See ECF No. 143-7 at 30; ECF No. 147 at 22). Jones's motion to substitute, made on the eve of trial and for the purposes of delaying trial, was therefore untimely.

As to the second factor, the Court made a serious inquiry into Jones's complaint about his counsel and ordered an attorney-inquiry hearing in front of United States Magistrate Judge Maddox. (ECF No. 147 at 10–13; ECF No. 143). Judge Maddox held a thorough hearing in which he questioned Jones and defense counsel regarding the motion. (ECF No. 143). Ultimately, Judge Maddox found that Jones was attempting to manipulate the docket. (Id. at 30). This Court reviewed Judge Maddox's findings in its determination on Jones's motion to substitute. (ECF No. 147 at 15).

Third, while there was a conflict between Jones and his counsel, any breakdown in communications between Jones and his counsel was due to Jones's own behavior. "The district court is not compelled to substitute counsel when the defendant's own behavior creates a conflict." United States v. Morsley, 64 F.3d 907, 918 (4th Cir. 1995). Here, Jones refused to speak with his counsel when they visited him at CDF and repeatedly threatened his counsel. (ECF No. 147 at 2–3, 4, 10, 39; ECF No. 156 at 3). Jones made incredible allegations concerning his attorneys, which the Court investigated and found to be an attempt to manipulate the Court's docket. (ECF No. 143 at 20, 30; ECF No. 102 at 3–5). Because any breakdown in communications was due to Jones's own behavior, the Court properly denied his motion to substitute counsel.

Finally, the Court has a strong interest in the orderly administration of justice. Both the government and defense counsel had devoted significant time to this case prior to Jones's late motion to substitute counsel. When Jones's request to discharge his counsel was made, a voluminous jury pool had already been summoned, and the Court had devoted significant resources to this trial. As such, all factors weigh in favor of the Court's decision to deny Jones's eleventh-hour request to discharge his counsel, and Jones will not be afforded a new trial or judgment of acquittal on this basis.

### b.      Request to Proceed Self-Represented

Defendants have the right to self-representation in a criminal trial under the Sixth Amendment. Faretta v. California, 422 U.S. 806, 807 (1975). However, this right to self-representation is not absolute and "can be waived by failure timely to assert it, or by

subsequent conduct giving the appearance of uncertainty." <u>United States v. Gillis</u>, 773 F.2d 549, 559 (4th Cir. 1985) (citation omitted). A request to proceed self-represented must be "(1) clear and unequivocal; (2) knowing, intelligent and voluntary; and (3) timely." <u>United States v. Bush</u>, 404 F.3d 263, 271 (4th Cir. 2005).

Here, it is not clear that Jones even made a request to proceed self-represented. Judge Maddox noted that Jones "didn't make any indication of any interest to represent himself . . . he asked for new lawyers." (ECF No. 143 at 29). It was only when this Court, in denying his request to substitute counsel, stated that Jones was intending to manipulate the Court's calendar that Jones called out "I can represent myself." (ECF No. 147 at 17–18). Jones repeated that he could represent himself as part of an outburst where he called this Court a racial slur. (<u>Id.</u> at 18–19). These disruptive statements cannot be said to be a "clear and unequivocal" assertion of his right to proceed self-represented.

Jones's request was also not clear and unequivocal because it was made for the purposes of manipulating the Court's schedule and to delay trial. "[A] district court can deny a request for self-representation when the request is made for purposes of manipulation because, in such cases, the request will not be clear and unequivocal." <u>Bush</u>, 404 F.3d at 271. As both this Court and Judge Maddox found, Jones's conduct the morning of trial was a tactic to delay trial. (<u>See</u> ECF No. 143 at 30, 32; ECF No. 147 at 22). Prior to this request, Jones had used his counsel for multiple years and had appeared in court with his counsel on multiple occasions. Only when Jones's motion to delay his trial and motion to discharge counsel were denied did he make some request to proceed self-represented, seemingly as a last-ditch attempt to delay his trial. "[E]ven at the trial level,

13

. . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." <u>Bush</u>, 404 F.3d at 272 (quoting <u>Martinez v. Court of Appeal of California, Fourth Appellate Dist.</u>, 528 U.S. 152, 162 (2000)). Here, Jones admitted that he had not reviewed discovery, (ECF No. 194-8 at 1), and any request to proceed self-represented was made in conjunction with a refusal to wear civilian clothes, a refusal to take his medication, disruptive remarks in the courtroom, threats against his counsel and the judge, and baseless accusations against his attorneys. Jones was not prepared to represent himself and, taken with his other behavior, his request to proceed self-represented appears to be an attempt to manipulate the Court's schedule and delay trial.

Jones's request to proceed self-represented was also not timely. The Fourth Circuit requires that "the right of self-representation be asserted at some time before meaningful trial proceedings have commenced." <u>United States v. Lawrence</u>, 605 F.2d 1321, 1325 (4th Cir. 1979) (cleaned up). Jones did not make his request until the afternoon of September 11, 2023, at the beginning of jury selection proceedings. (ECF No. 147 at 17). Pre-trial proceedings had already taken place over the course of three days. The Fourth Circuit has upheld district courts' denials of requests to proceed self-represented when such requests were, as here, made on the day jury selection was scheduled to begin and were viewed as tactics to delay trial. <u>See</u> <u>United States v. Thomas</u>, 391 F.App'x 321, 327–28 (4th Cir. 2010); <u>see also</u> <u>United States v. Hilton</u>, 701 F.3d 959, 965 (4th Cir. 2012). In <u>United States v. Thomas</u>, the Fourth Circuit stated that the defendant's motion to represent himself, which was made "on the day of trial after the district court considered <u>in limine</u> motions"

14

"was not made before meaningful trial proceedings had commenced." 391 F.App'x at 327. Likewise, Jones's request to represent himself was not made before meaningful trial proceedings had commenced and thus was not timely. Accordingly, Jones will not be granted a new trial or judgment of acquittal on this basis.

### 2.    Right to Be Present

For the reasons set out below, the Court concludes that Jones was present at the beginning of trial, that he thereafter both voluntarily and constructively waived his right to be present, and that the "interests of justice" greatly disfavors granting Jones's Motion for Judgment of Acquittal and a New Trial.

A defendant has a right to be present at "(1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing." Fed.R.Crim.P. 43(a). This right also arises from the Sixth Amendment's Confrontation Clause when confronting witnesses, and from the Due Process Clause. United States v. Rosales-Rodriguez, 289 F.3d 1106, 1109 (9th Cir. 2002). However, this right is not absolute. Rule 43(c)(1) provides that a "defendant who was initially present at trial" may waive the right to be present:

> (A) when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial; (B) in a noncapital case, when the defendant is voluntarily absent during sentencing; or (C) when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom.

Fed.R.Crim.P. 43(c)(1). An absence is "voluntary" where it is knowing and intelligent. United States v. Lawrence, 248 F.3d 300, 304–05 (4th Cir. 2001). When the defendant is absent, "[t]he court should try to find out where the defendant is and why he is absent, and should consider the likelihood the trial could soon proceed with the defendant, the difficulty of rescheduling and the burden on the government." United States v. Rogers, 853 F.2d 249, 252 (4th Cir. 1988). Rule 43(c)(2) provides, "[i]f the defendant waives the right to be present, the trial may proceed to completion, including the verdict's return and sentencing, during the defendant's absence." Fed.R.Crim.P. 43(c)(2).

Here, Jones waived his right to be present under both Federal Rules of Criminal Procedure 43(c)(1)(A) and 43(c)(1)(C). Jones argues that he was not present for the start of trial, namely for voir dire or jury impanelment, so his right to be present could not be waived under 43(c)(1)(A). (Mot. at 23–24). The purpose of requiring a defendant's initial presence at trial is to assure that any waiver of the right to be present is knowing, and it is unlikely "that a defendant who flees from a courtroom in the midst of trial – where judge, jury, witnesses and lawyers are present and ready to continue – would not know that as a consequence the trial could continue in his absence." Crosby v. United States, 506 U.S. 255, 261–62 (1993) (quoting Taylor v. United States, 414 U.S. 17, 20 (1973)). The Fourth Circuit rejected an argument that a Rule 43 error occurred where a defendant voluntarily absented himself "throughout jury selection and the presentation of evidence." United States v. Lawrence, 161 F.3d 250, 252 (4th Cir. 1998). The Fourth Circuit found that the defendant was present for the beginning of the case when he was in the courtroom "after the time the case was called and the trial began, but before the jury was empaneled" and

before any voir dire took place. <u>Id.</u> at 254. Moreover, the Fourth Circuit held that even if there were an error under Rule 43, "it is invited error brought on at [defendant's] own request and, as such, is not reversible." <u>Id.</u> at 255.

Other circuits have reached the same conclusion that a defendant may waive the right to be present so long as the defendant is present the day the trial begins, prior to jury selection. The Seventh Circuit has held that, for purposes of Rule 43(c)(1)(A), a jury trial begins on the day that jury selection begins, not at "the precise moment that one or more prospective jurors enter the courtroom." <u>United States v. Benabe</u>, 654 F.3d 753, 771–72 (7th Cir. 2011). The Second Circuit has also found that when a defendant is present immediately prior to voir dire, at a time when "the jury venire was in the courthouse," a conclusion that "the trial already had begun" served the "policy of requiring a knowing and voluntary waiver of Rule 43." <u>Cuoco v. United States</u>, 208 F.3d 27, 32 (2d Cir. 2000). The Eleventh Circuit has also held that a trial began for purposes of Rule 43 when a disruptive defendant was present the day trial began, was removed prior to jury selection, and remained absent for the remainder of the trial. <u>United States v. Sterling</u>, 738 F.3d 228, 236–37 (11th Cir. 2013); <u>see also</u> <u>United States v. Perkins</u>, No. 1:10-CR-97-1-JEC-LTW, 2013 WL 3820716, at *14 (N.D.Ga. July 23, 2013), <u>aff'd,</u> 787 F.3d 1329 (11th Cir. 2015) (denying defendant's Rule 43 motion and holding that defendant was present for the beginning of trial because he was present when the case was called to order). Applying these principles here, Jones's trial began the morning of September 11, 2023, when he was present in the courtroom throughout the morning session and for the beginning of the afternoon session.

The Court finds that Jones was present at the beginning of trial, and his waiver of his right to be present was knowing and voluntary. Jones was in the courtroom the day the trial was scheduled to begin, and, as Jones was aware, the jury was present in the courthouse throughout the day. (ECF No. 147 at 8, 12). Jones spent hours of the day in multiple courtrooms before multiple judges, the court reporter, government counsel, and defense counsel. Jones was present at the Court session during which the jury was brought out, and he would have been present for voir dire had he not been removed for his threatening and disruptive behavior. Every day thereafter, Jones voluntarily waived his right to be present by refusing to come to the courthouse and refusing to take his medicine. The Court repeatedly inquired into Jones's status, and each day the U.S. Marshall service informed the Court that Jones refused to leave CDF to come to the courthouse and refused to take his medication. (See, e.g., ECF No. 158 at 2–3).

The interests of justice also favored continuing the trial in Jones's absence. The government put on a significant case with multiple out-of-state victims and witnesses testifying. Given that the trial was already underway when Jones waived his right to be present, rescheduling would have been highly burdensome on the Court and the government. Thus, the Court finds Jones was present at the beginning of trial and thereafter waived his right to be present for the remainder of trial knowingly and voluntarily under 43(c)(1)(A).

In any event, Jones also waived his right to be present under 43(c)(1)(C). See Illinois v. Allen, 397 U.S. 337, 343 (1970) (holding a defendant can lose his constitutional right to be present at trial if he continues disruptive behavior after being warned it may result in

removal). A district court has wide discretion to protect the "dignity, order, and decorum" of the court from "disruptive, contumacious, [and] stubbornly defiant defendants." Id. In exercising that discretion, the court is permitted to remove disruptive defendants. See Fed.R.Crim.P. 43(c)(1)(C); accord Allen, 397 U.S. at 343–44. The court must allow a defendant to return if the defendant has "satisfactorily demonstrated that he would not be violent or disruptive," but that determination is committed to the sound discretion of the trial court. Jones v. Murphy, 694 F.3d 225, 240–41 (2d Cir. 2012). "[C]aution is appropriate in assessing the trial judge's response to" disruptive outbursts, as "a cold transcript provides no insight into tone of voice, body language, or possible overtly threatening behavior that might cast mere spoken words in a different light." Id. at 238.

Here, Jones was repeatedly disruptive and threatening in the courtroom throughout multiple court appearances and in front of multiple judges. Jones was removed from this courtroom twice and from Judge Maddox's courtroom once. The Court warned Jones multiple times that if he continued to be disruptive he would waive his right to be present, yet Jones continued to make angry outbursts, called this Court a racial slur, and overtly threatened to physically attack this Court. (ECF No. 147 at 18; ECF No. 194-10 at 17).

Given Jones's repeated threats and refusal to come to the courthouse, the Court had limited alternative options. Jones refused to be transported to the courthouse every morning. The Court's only other option was to require the United States Marshals to force Jones out of CDF, into transportation, and into the courtroom, over what the Court had reason to believe would be Jones's violent resistance. If the Court were even able to get Jones to the courtroom, given Jones's repeated threats and disruptions, he would have been

shackled and muzzled. This would have undoubtably made Jones look dangerous to the jury and have needlessly created jury prejudice against him. Additionally, Jones refused to take his medication. The Court was concerned about forcing him to come to the courthouse unmedicated and risk a medical emergency, as indicated in the record. (ECF No. 194-10 at 10–11). Because the trial, for which Jones was present at the beginning, was already underway, the Court had little other option than to continue with the trial in Jones's absence. For these reasons, the Court will not grant Jones's Motion for Judgment of Acquittal and New Trial on the basis that the Court violated his right to be present.

### 3.     Denial of Competency Evaluation

Jones also argues that he is entitled to a judgment of acquittal and a new trial because the Court erred in not ordering a competency evaluation. (Mot. at 26–27). Title 18 U.S.C. § 4241(a) provides that any time after the commencement of a prosecution:

> [T]he defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Whether reasonable cause to order a competency hearing under § 4241 exists is a question left to the discretion of the trial court, and it is reviewed for abuse of discretion. United States v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995). To determine whether there is reasonable cause, a trial court must look at the record as a whole, "including evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the

defendant's competence" and "accept as true all evidence of possible incompetence." <u>Id.</u> at 1290 (cleaned up). "The mere existence of some degree of mental impairment does not necessarily equate to 'legal incompetence.'" <u>United States v. McKoy</u>, 770 F.App'x 60, 62 (4th Cir. 2019). "Competency turns on 'whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" <u>Id.</u> (quoting <u>United States v. Bernard</u>, 708 F.3d 583, 593 (4th Cir. 2013)). "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." <u>Burket v. Angelone</u>**,** 208 F.3d 172, 192 (4th Cir. 2000). If reasonable cause is demonstrated, the district court must <u>sua sponte</u> order a competency hearing. <u>Mason</u>, 52 F.3d at 1289.

The Court finds that the record did not demonstrate reasonable cause to believe Jones was incompetent to stand trial. First, reasonable cause does not exist where a defendant attempts to feign incompetence to avoid trial. The Fourth Circuit has held "[t]he requirement of § 4241(a) that the district court grant a competency hearing when reasonable cause exists cannot be expanded to require such a hearing any time that a defendant engages in disruptive tactics or pursues a frivolous legal strategy." <u>United States v. Banks</u>, 482 F.3d 733, 742–43 (4th Cir. 2007); <u>see id.</u> (District court did not err in denying competency hearing where "[t]here was nothing before the district court to suggest that [the defendant's] behavior reflected anything other than an ill-advised, self-defeating legal strategy" and the defendant had initially been cooperative with the court then abruptly began a strategy of refusing to participate in proceedings). Both Judge Maddox and this

Court found that Jones was attempting to delay trial and manipulate the Court's schedule. The issue of Jones's competency was not raised until the first day of trial. Jones's counsel admitted that, in their examination of Jones's mental health records, they did not see any past issues with hallucinations or anything similar. (ECF No. 143 at 21–22). Prior to the start date of trial, Jones's counsel did not raise any issues of competency, and Jones did not demonstrate any erratic or otherwise concerning behavior. In fact, Jones remained composed in the courtroom during pre-trial hearings on both September 5, 2023 and September 7, 2023. It was only after the Court denied Jones's motion to delay the trial and made evidentiary rulings adverse to Jones that he began claiming that he was experiencing hallucinations including speaking with the "[T]ooth [F]airy." (ECF No. 143 at 21).

Additionally, Jones demonstrated lucidity and an understanding of the proceedings at trial. Competency turns on "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." McKoy, 770 F.App'x at 62 (quoting Bernard, 708 F.3d at 593). During pre-trial proceedings and proceedings on the morning of trial, the Court observed that Jones shook his head in agreement with points mentioned by defense counsel and the Court and responded to the Court's questions. (ECF No. 147 at 20–21). As just one example, at the September 7, 2023 pre-trial hearing, when this Court informed Jones that he would have to pull down his mask for the jury to identify him, Jones removed his mask, indicating understanding. (ECF No. 145 at 47–48). At the pre-trial hearings, Jones regularly consulted with his lawyers and

displayed an understanding of the proceedings against him, which weighed against ordering a competency evaluation.

The fact that Jones reported a suicide attempt does not alone establish reasonable cause to order a competency hearing. See Drope v. Missouri, 420 U.S. 162, 180 (1975) (considering defendant's suicide attempt as one of several factors in determining reasonable cause existed for competency hearing). While Jones had been placed on suicide watch at CDF, that alone is not sufficient to establish reasonable cause. See U.S. v. Bruck, 152 F.3d 40, 45–47 (1st Cir. 1998) (District court did not err by failing to conduct full competency hearing despite the defendant's history of psychological illness and erratic behavior, counsel's difficulty in communicating with defendant, and court-imposed custody after the verdict due to suicide risk, because expert testimony revealed that the defendant was competent and likely fabricating or exaggerating symptoms); see also Walton v. Angelone, 321 F.3d 442, 454 n.10, 460 (4th Cir. 2003) (holding that habeas petitioner was competent at the time of his guilty pleas and at the sentencing phase of his trial even where "during th[e] time frame . . . [o]n one occasion [habeas petitioner] Walton told the [public defender's office] secretary that he was thinking about suicide."). At the time defense counsel requested a competency hearing, the Court considered the totality of the record before it. Jones's sudden disruptive behavior indicated an attempt to manipulate the Court's docket and delay trial, and Jones had previously demonstrated an understanding of the proceedings at trial. Accordingly, the Court maintains that reasonable cause did not exist to order a competency evaluation, and Jones's Motion for New Trial and Judgment of Acquittal will not be granted on this basis.

### 4. Sufficiency of Evidence

To the extent Jones argues that he is entitled to a new trial under Rule 29 because there was not sufficient evidence to support the jury verdict, (Mot. at 3), his motion must be denied. A jury's verdict must be sustained where there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). In reviewing sufficiency of the evidence, the court must consider "whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008) (quoting U.S. v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982)). The government here presented sufficient evidence to establish the essential elements of all counts in the superseding indictment beyond a reasonable doubt, and the Court cannot overturn the jury verdict.

## III.   CONCLUSION

For the foregoing reasons, the Court will deny Jones's Motion for Judgment of Acquittal and a New Trial (ECF Nos. 137, 166). A separate Order follows.

Entered this 28th day of October, 2024.

_____/s/_____
George L. Russell, III
Chief United States District Judge